## JACKSON *v.* STATE.

(In Banc.   Oct. 9, 1944.   Suggestion of Error Overruled Nov. 13, 1944.)

[19 So. (2d) 440.   No. 35624.]

**W. T. Weir** and **Dees Stribling**, both of Philadelphia, for appellant.

34

**Greek L. Rice,** Attorney General, by **Geo. H. Ethridge,** Assistant Attorney General, for appellee.

**Roberds, J.,** delivered the opinion of the court.

Appellant was convicted of the murder of one Inez Martin and sentenced to the state penitentiary for life. She says the state failed to prove the venue of the crime. All the evidence, without contradiction, shows that the homicide occurred just to the rear of a restaurant then being operated in the City of Philadelphia by one Sam White. Two policemen of that city, who inspected and examined the scene· shortly after the killing, testified that this scene was in Philadelphia, Neshoba County, Mississippi. That sufficiently established the venue.

Appellant assigns seven other errors, but they all boil down to the one proposition that the lower court should have granted her request for a peremptory instruction on the theory that the only eyewitnesses to the tragedy testified and their testimony is reasonable and uncontradicted and established a case of self- defense, and that the defendant should have been acquitted under the rule laid down in Gaddis v. State (Miss.), 110 So. 691, and

other like cases. The trouble with the contention is that it ignores entirely the evidence of the state. That evidence contradicted in several material respects the testimony of the eyewitnesses. The cause of the crime was the rivalry of the participants over one Sam White. Appellant says she and one Ruby Triplett were the only eyewitnesses. They both testified. While their testimony is not entirely in harmony, they gave substantially this version: Appellant and Inez were dancing in Sam's Cafe and Inez purposely "bumped into" appellant; that appellant and Ruby Triplett went onto the front porch to eat a sandwich and Inez came by where they were and "ran up against" appellant; that she had a knife in her hand and made a threat against appellant; that appellant and Ruby Triplett went to the rear of the cafe to drink some whiskey and Inez followed them, whereupon there was a discussion between Inez and appellant as to the relation and possessory rights of each to Sam, and that Inez was in the act of trying to cut appellant when appellant drew her knife and stabbed Inez, from which she expired within a few moments.

As against this version the state introduced evidence to the effect that Inez did not own or possess a knife and had no pockets in her clothing in which to carry one. Eddie May Hudson testified she was in front of the cafe and saw Sam and Inez proceeding to the rear thereof, followed by appellant and Ruby Triplett, appellant remarking as she went, "Yonder goes the sons of bitches, let's catch them"; that while Eddie May did not see what occurred behind the cafe, that appellant shortly came therefrom and said: "I have done killed her," saying nothing of self-defense, or that Inez was trying to cut her; that Eddie May went immediately to Inez and found her stabbed in the heart and bleeding profusely and expiring; that Inez had no knife, or other weapon, and none was on the ground or about the scene. In addition to this, Mr. Lamar Evans, the city marshal, testified that he apprehended appellant after she had fled from the

scene and was proceeding along the public highway towards her home in Louisville, Mississippi, and when he informed her he was arresting her for the death of Inez Martin, she said, "I sure cut her," and when he asked her why she did it, she replied, "She was trying to run over me." Mr. Hugh Barrett, a city policeman, testified that the next day he was in the jail, and appellant called to him to know when she could get out, and in reply to his question, "What did you kill her for?" appellant replied "she was messing with her man."

There was also evidence that Ruby Triplett had told others that she did not see Inez with a knife at the time of the tragedy.

It is thus evident that the state's evidence contradicted that of the eyewitnesses in several most vital respects, and that this case, on the evidence, is not within the rule announced in Gaddis v. State, supra.

We find no error in this record and the case must be affirmed.

Affirmed.